# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 8, 2003

## STATE OF TENNESSEE v. ANDREA SPENCER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-03985-89    Joseph B. Dailey, Judge**

---

**No. W2002-01483-CCA-R3-CD  - Filed September 18, 2003**

---

As a result of a jury trial in Shelby County, the Defendant, Andrea Spencer, stands convicted of one count of aggravated rape, two counts of aggravated burglary, two counts of aggravated kidnapping, and one count of sexual battery.  The trial court ordered the Defendant to serve an effective sentence of eighty-four years as a Range II multiple offender.  On appeal, the Defendant contends (1) the trial court erred in refusing to sever the offenses; (2) dual aggravated kidnapping convictions violate double jeopardy principles; and (3) his sentence is excessive.  Upon review of the record and the applicable law, we vacate one of the Defendant's two aggravated kidnapping convictions due to a double jeopardy violation.  In addition, because certain enhancement factors were wrongfully applied, we reduce the Defendant's sentence for sexual battery by one year and one of his sentences for aggravated burglary by three years, thereby reducing the Defendant's effective sentence to eighty years.  We otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part;**
**Reversed and Vacated in Part; Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Robert Wilson Jones, Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Michael J. Johnson, Assistant Public Defender (at trial), for the appellant, Andrea Spencer.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Smith Nichols and Amy P. Weirich, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions for sexual battery and one count of aggravated burglary relate to incidents on August 30, 1999, involving S.S.,[1] the thirteen-year-old victim. His convictions for aggravated rape, one count of aggravated burglary, and two counts of aggravated kidnapping relate to events involving the same victim on October 30 and 31, 1999.

Loretta Saulter, the victim's mother, testified that in 1999, she, the victim, and her other daughter were living in a two-bedroom duplex on Lamar Cove in Shelby County, Tennessee. She stated that on August 30, 1999, at approximately 12:00 a.m., she was awakened by the victim yelling from her bedroom. The victim then ran into Saulter's bedroom and told her the Defendant had broken into the residence through the window and fondled her while she was sleeping in her bed. Saulter testified that when she ran into the victim's bedroom, no one was there, but the window, which had a broken lock, was open. She stated that on prior occasions, the victim had complained to her that the Defendant, who lived in the same neighborhood, had followed her and attempted to speak to her. Saulter said she reported the incident to the police. The Defendant was not arrested.

Saulter testified that on October 30, 1999, the victim went to a Halloween party with her friends, while Saulter attended another party. The victim had planned to go to her grandmother's house after the party, but she decided to go back to her residence instead. Saulter testified that when she returned to the residence at approximately 3:30 a.m., the victim was not there. She then went to sleep believing that the victim was at her grandmother's house.

Saulter stated that at approximately 6:00 a.m., she was awakened by a neighbor knocking on her front door. The neighbor was holding the victim, who had a sheet wrapped around her. Saulter observed that the victim was scared, bleeding, incoherent, and moaning. Although the victim was wearing a T-shirt, she was not wearing shorts or underwear.

Saulter testified that after the police arrived, the victim was taken to the hospital where she received stitches on her face. She stated that at the time of trial, the victim still had visible scars on her face. As a result of her injuries, the victim was unable to use her hands and arms or attend school for approximately one month. Saulter maintained that the Defendant did not have permission to be inside her home on either occasion.

The victim testified that on August 30, 1999, she was awakened by the Defendant rubbing her buttocks. She was wearing shorts and a T-shirt, and the Defendant's hand was in her shorts and touching her buttocks. The victim stated that although she did not see the Defendant enter her bedroom, her window, which had a broken lock, was closed when she fell asleep and was open when the Defendant awakened her. When the victim jumped out of her bed and yelled for her mother, the Defendant exited her bedroom through the same window.

---

[1]In accordance with this court's policy, we refer to minor victims of sexual offenses by their initials.

The victim testified she recognized the Defendant as a neighbor, who, on prior occasions, had followed her and asked her for a date. She stated that after the incident, the Defendant continued to follow her and ask her to "go" with him. The victim asserted she did not give the Defendant permission to be in her bedroom and to touch her. She further stated that after the incident, she began sleeping in her mother's bed.

The victim testified that on October 30, 1999, she attended a Halloween party and returned to her residence at approximately 11:00 p.m. instead of going to her grandmother's home as originally planned. She stated that while she was sleeping in her mother's bedroom, the Defendant entered the room, placed his hands over her nose and mouth, and choked her. The Defendant then drug her by her legs and throat to his duplex, which appeared to be vacant. The victim testified the Defendant told her that he would kill her if she yelled for help. The Defendant took her to a bedroom, threw her on the floor, removed her shorts and underwear, and forced her to engage in penile/vaginal intercourse. The Defendant then drug the victim back to her residence and placed her inside through her bedroom window. The victim stated the Defendant told her that he was "sorry"; that he believed she was "grown"; and that she should not tell anyone.

The victim testified the Defendant then pulled her back outside through the same window. She stated that at the time, she was wearing all of her clothes and was not bleeding. She further stated she had no memory of what occurred next.

The victim testified that when she regained consciousness, she was lying in her backyard. She was injured, bleeding, and missing her shorts and underwear. The victim stated that because she was unable to stand and walk, she attempted to crawl to her front door in order to awaken her mother. She attempted to knock on the door with a bottle, but she dropped the bottle and broke it. A neighbor heard the victim, covered her with a sheet, and retrieved her mother. The victim stated she was taken to the hospital where she received medical treatment, including stitches on both sides of her face.

The victim testified police officers came to her residence the next afternoon, and she identified the Defendant from a photograph array as the man who assaulted her. The officers returned two days later, and she identified the Defendant in a different photograph array as the man who also entered her bedroom in August.

Officer Thomas Avery testified that on August 30, 1999, at approximately 3:30 a.m., he received a call to the victim's residence. The victim told him that while she was sleeping, the Defendant entered the residence through her bedroom window. The victim described the Defendant and informed the officer where the Defendant lived. The officer stated he knocked on the Defendant's front door, but no one answered, even though the officer heard someone inside the residence. Officer Avery testified he did not have a warrant to enter the Defendant's residence, and he did not believe he could do so without one. He then left the residence and subsequently reported the incident to the Sex Crimes Unit of the Memphis Police Department.

Officer Avery testified that on October 31st at approximately 6:00 a.m., he received another call from the victim's residence. He observed upon his arrival that the victim was severely cut and bleeding profusely. The victim identified the man who injured her as the same man who entered her apartment in August. The victim further identified the place where the incident occurred as the duplex where the Defendant was living in August. Officer Avery testified that upon entering the abandoned duplex, he and other officers found an identification card with a photograph of the Defendant and mail addressed to the Defendant. Officers also located a pair of girl's pajama bottoms and underwear inside the duplex, which otherwise appeared to be vacant.

Sergeant Jimmy Daniels testified that after the Defendant was arrested on October 31, 1999, he observed a cut on the Defendant's finger. Jerry Sims, a latent fingerprint examiner, testified that fingerprints, which an officer lifted from the victim's window on October 31st, matched those of the Defendant.

Sally DiScenza, a forensic nurse examiner, testified she examined the victim on October 31st. She observed that the victim had multiple lacerations on her face and chest, which had been sutured. DiScenza stated the victim had bruises in the area of her vagina, which she opined were consistent with forced sexual penetration. TBI Agent Chad Johnson testified sperm, which he found on the victim's vaginal swab, matched that of the Defendant.

The Defendant testified he spoke to the victim on numerous occasions, and the victim was friendly with him. He stated the victim told him that she was nineteen years old. The Defendant denied breaking into the victim's residence and fondling her on August 30, 1999. He further stated the police did not knock on his door that night, and had the police done so, he would have answered.

The Defendant testified he and the victim had consensual sex in her bedroom on October 30, 1999, between 5:30 and 6:00 p.m. He denied forcing the victim to engage in sex and injuring her. He stated he cut his finger while repairing his son's wagon.

The Defendant testified that after he was arrested, he gave a statement to the police in which he denied entering the victim's residence and engaging in sexual intercourse with her. He further stated that while he was incarcerated, he wrote letters to the victim's mother asking for forgiveness.

The Defendant was convicted of sexual battery, a Class E felony, and aggravated burglary, a Class C felony, for the incidents which occurred on August 30, 1999. See Tenn. Code Ann. §§ 39-13-505(c) (sexual battery), 39-14-403(b) (aggravated burglary). The Defendant also received convictions for aggravated rape, a Class A felony, aggravated burglary,[2] a Class C felony, and two counts of aggravated kidnapping, Class B felonies, for the events which occurred on October 30 and 31, 1999. See id. §§ 39-13-304(b)(1) (aggravated kidnapping), -502(b) (aggravated rape), -14-403(b)

---

[2]The jury originally convicted the Defendant of especially aggravated burglary as charged in the indictment. However, for reasons not apparent in the record, the trial court amended the judgment to reflect a conviction for aggravated burglary with a ten-year sentence.

(aggravated burglary). The trial court ordered the Defendant to serve an effective sentence of eighty-four years as a Range II multiple offender.

## I. SEVERANCE OF OFFENSES

The Defendant contends the trial court committed reversible error in failing to sever the offenses relating to the August incident from the offenses relating to the October incident. We discern no reversible error.

### A. Severance Hearing

The various offenses were set forth in a series of separate indictments. Prior to trial, the State asked to consolidate the indictments, and the Defendant opposed the request.[3] During the consolidation hearing, the Defendant argued that consolidation would result in unfair prejudice.

The trial court found that although consolidation of the offenses would result in "some prejudice," the probative value of the evidence was "great" and "far outweigh[ed]" any prejudicial effect. The trial court noted the offenses involved the same victim who identified the Defendant as "the same individual that . . . first fondled her and then later assaulted her . . . [and] came in the same bedroom in the same manner." The court found that the facts and circumstances supported the issue of identity, which was "perhaps the primary or only issue in this case." The court further found the evidence was "highly probative and very relevant to the question of identity and to the question of common scheme or plan." It then permitted the State to consolidate the indictments.

### B. Analysis

In reviewing a trial court's decision regarding severance of offenses, we look to the evidence presented at the motion hearing, along with the trial court's findings of fact and conclusions of law. Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000). We review the trial court's decision under an abuse of discretion standard. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). This court will not interfere with the exercise of this discretion unless it appears on the face of the record that the accused was prejudiced by the court's ruling. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

Because a motion to consolidate or sever offenses is generally a pre-trial motion, "evidence and arguments tending to establish or negate the propriety of consolidation must be presented to the trial court in the hearing on the motion." Spicer, 12 S.W.3d at 445. Accordingly, the appellate court should "usually" only examine the evidence presented during the hearing, as well as the trial court's

---

[3]The State did not file a written motion for consolidation. The Defendant did file a written motion for severance. Because the offenses were set forth in separate indictments, it was the State's responsibility to seek consolidation, not the Defendant's responsibility to seek severance.

findings of fact and conclusions of law, in determining whether the trial court abused its discretion in consolidating the offenses.  Id.

In the present case, the State, pursuant to Tennessee Rule of Criminal Procedure 13(a), sought to consolidate the offenses, which were charged in multiple indictments.  The Defendant objected, thereby bringing into play Rule 14(b)(1).  As a result, the burden was on the State to demonstrate that "the offenses [were] parts of a common scheme or plan and that evidence of each offense [was] admissible in the trial of the others" as required by Rule 14(b)(1).  Spicer, 12 S.W.3d at 444.  The trial court was then required to consider whether consolidation was appropriate in light of Rule 14(b)(1).  Id.

Where offenses are "part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others," the trial court is allowed wide discretion in determining whether to sever offenses.  Shirley, 6 S.W.3d at 247.  A decision to sever offenses under Rule 14(b)(1) will turn on the facts of each case; therefore, a trial court's decision regarding severance will be reversed only where the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining."  Id. (citations omitted).

In determining whether a severance is mandated, the primary inquiry is whether the evidence of one crime would be admissible in the trial of the other offense if the two charges were tried separately.  Id.; Spicer, 12 S.W.3d at 445.  The courts should look to Tennessee Rule of Evidence 404(b) for guidance in determining whether the evidence of the other offense is admissible.  See Shirley, 6 S.W.3d at 247-48.  Rule 404(b) excludes evidence of a defendant's "other crimes, wrongs, or acts" if offered only to show the defendant's propensity to commit such "crimes, wrongs, or acts"; however, if the evidence is otherwise relevant to a material issue, Rule 404 does not prohibit its admission.  State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999).  Not only must the evidence be relevant, but the probative value of the evidence must not be outweighed by its prejudicial effect.  Spicer, 12 S.W.3d at 445.

The court must also determine if the offenses qualify as a common scheme or plan.  Tenn. R. Crim. P. 14(b)(1); Moore, 6 S.W.3d at 240.  Our supreme court has noted that "a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes."  Moore, 6 S.W.3d at 240 n.7.  Therefore, Tennessee Rule of Evidence 404(b) is also relevant to this issue.  There are three categories of common scheme or plan evidence: (1) distinctive design or signature crimes; (2) a larger continuing plan or conspiracy; and (3) same criminal transaction.  Moore, 6 S.W.3d at 240; Shirley, 6 S.W.3d at 248.

The Defendant contends that the offenses were not so distinct as to establish a distinctive design.  For a distinctive design to exist among multiple offenses, the *modus operandi* of the offenses "must be substantially identical and must be so unique that proof the defendant committed the other offenses fairly tends to establish that he also committed" the charged offense.  Moore, 6 S.W.3d at 240 (citations omitted).  Mere similarity between offenses or the fact that a defendant has

committed a series of crimes is insufficient to prove the offenses are part of a common scheme or plan. Id. at 241.

We are unable to conclude the offenses qualified under the distinctive design or signature crime category. Although the offenses, which occurred two months apart, involved the same victim at the same location, they were not committed with "such unusual particularities" as to establish a distinct *modus operandi*, nor were the circumstances of the offenses so "strikingly" similar as to be regarded as the Defendant's signature. See id. During the August incident, the Defendant entered the victim's residence and rubbed her buttocks while she was sleeping. During the October incident, the Defendant entered the victim's residence while she was sleeping, forced the victim to go to his residence, forced her to engage in sexual intercourse, took the victim back to her home, removed her from the residence once more, and severely beat her. The *modus operandi* was not so unique as to allow a reasonable person to conclude that if the Defendant committed the August offenses, then he also must have committed the October offenses. See id. at 241-42 (holding that three acts of child rape, which occurred three months apart at the same location and involved the same victim, were not part of a common scheme or plan based on a distinctive design).

The second category of common scheme or plan evidence involves a continuing plan or conspiracy. Shirley, 6 S.W.3d at 248. This category includes groups of offenses committed "in order to achieve a common ultimate goal or purpose." State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). This category requires evidence of "a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial." State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995), overruled on other grounds by Spicer v. State, 12 S.W.3d 438 (Tenn. 2000).

In the case at bar, the victim testified that on numerous occasions both prior to and after the August incident, the Defendant followed her around her neighborhood and made advances toward her. The victim stated that after the Defendant forced her to engage in sexual intercourse during the October incident, he apologized and told her that he had believed she was "grown." Furthermore, as noted by the trial court, on both occasions, the Defendant entered the same residence through the same form of entry and engaged in sexual acts with the same victim. We conclude this evidence sufficiently demonstrates that the offenses were part of a continuing plan to engage in sexual contact with the victim.

Once the trial court determines that evidence of the offenses is relevant to a material issue, it must then balance the probative value of the evidence against the risk of unfair prejudice to the defendant. Spicer, 12 S.W.3d at 445; see Tenn. R. Evid. 404(b)(3).

The trial court found that evidence of the offenses was relevant to the issue of identity. The Defendant contends that identity was not an issue. However, although the Defendant was willing to concede consensual sex in October, he denied any involvement in the August offense. Thus, the identity of the perpetrator regarding the August offenses was indeed a material issue at trial. Furthermore, evidence of the October offenses was relevant to the issue of identity regarding the

August offenses, although they were subsequent crimes. See State v. Elkins, 102 S.W.3d 578, 583 (Tenn. 2003) (holding that evidence of subsequent crimes are admissible if they are relevant to the issues of "identity, intent, continuing scheme or plan, or rebuttal of accident, mistake, or entrapment"). Further, evidence of the August offense was relevant to the issue of the Defendant's intent in the October offenses. The Defendant claimed that he engaged in consensual sex with the victim in the October incident, and the evidence of the August offense was relevant to rebut that contention.

However, in State v. Thomas Dee Huskey, a panel of this court concluded that when the basis for admissibility under Rule 404(b) is identity, only the signature crimes category may be used in establishing a common scheme or plan for consolidation purposes. No. E1999-00438-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 550, at *75 (Tenn. Crim. App. June 28, 2002, at Knoxville), perm. to app. denied (Tenn. 2003). The Huskey court further observed that in cases in which identity was the basis for Rule 404(b) admissibility, evidence of the other offense itself does not provide proof of identity; rather, it is the evidence found at the other crime scene which connects the defendant to the other offenses in the scheme. Id. In State v. Mario Antoine Leggs, No. M2002-01022-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 442, at **15-16 (Tenn. Crim. App. May 21, 2003, at Nashville), a panel of this court held a "larger, continuing plan" satisfied the common scheme or plan prong; the probative value of evidence of one of the offenses was outweighed by the risk of unfair prejudice; nevertheless, the error was harmless.

In this case, we have concluded that any error in consolidating the offenses is harmless. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). Before reversal based upon a trial court's error in denying severance is appropriate, a defendant must show that the error probably affected the judgment. Moore, 6 S.W.3d at 242. The evidence regarding each offense was more than sufficient to allow a rational jury to convict the Defendant of both the August offenses and the October offenses. We also note that the victim knew the Defendant and identified him as the perpetrator of all offenses. We conclude the Defendant has not demonstrated that consolidation probably affected the judgment to his prejudice; therefore, any error which the trial court may have committed was harmless.

## II. DOUBLE JEOPARDY

The Defendant was charged and convicted of one count of aggravated kidnapping for removing the victim and one count of aggravated kidnapping for confining the victim on October 30 and 31, 1999. See Tenn. Code Ann. §§ 39-13-302(a), -304(a). The Defendant contends his dual convictions for aggravated kidnapping violate double jeopardy principles. The State concedes the error, and we agree.

The State concedes that only one period of continuous, unlawful confinement occurred. Generally, "a single, wrongful act may not furnish a basis for more than one criminal prosecution." State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996); see also State v. Eddie Medlock, No. W2000-03009-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 41, at **8-9 (Tenn. Crim. App. Jan. 16, 2002,

at Jackson) (holding dual convictions for especially aggravated kidnapping committed against one victim violated double jeopardy where the offenses arose out of one continuous course of conduct), perm. to app. denied (Tenn. 2002). Further, the "removal" and "confinement" of a victim are not separate offenses. Instead, removal or confinement are alternative means of committing the offense. See Tenn. Code Ann. § 39-13-302(a). Accordingly, we vacate the conviction on the second count of aggravated kidnapping. However, because the trial court ordered that the sentences for the aggravated kidnapping convictions run concurrently, our decision does not impact the Defendant's effective sentence.

### III. SENTENCING

Finally, the Defendant contends his sentence is excessive. Specifically, he argues that the trial court wrongfully applied certain enhancement factors.

### A. Sentencing Hearing

During the sentencing hearing, the State submitted a presentence report which included victim impact statements from the victim and her mother. In the victim's statement, she related that for a period of time after the offenses occurred, she was unable to walk and unable to move her right arm. As a result of her injuries, she has continued to seek medical treatment. The victim stated she was unable to attend school for a period of time after the incidents, and, upon her return, she was unable to participate in any activities. The victim further stated she had permanent scars on her face, which will "always make [her] feel bad about [her]self." She related that she was still afraid to be alone in her home at night.

In the mother's impact statement, she related that the victim has permanent scars on her chin and face. The mother stated that the victim slept with her for months after the crimes occurred.

The Defendant, although not denying that he had sexual intercourse with the victim in October, stated, "It's just being blown out of proportion."

### B. Trial Court's Findings

The trial court noted that in sentencing the Defendant, it considered the presentence report and the proof presented at trial and during the sentencing hearing. It then applied the following enhancement factors to all offenses:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great; [and]

(18) A victim, under § 39-15-402, suffered permanent impairment of either physical or mental functions as a result of the abuse inflicted.

Tenn. Code Ann. § 40-35-114(1), (9), (10), (16), (18) (1997).[4]

The trial court found no mitigating factors applied and imposed the maximum sentence for each offense. It sentenced the Defendant as a Range II multiple offender to forty years for the aggravated rape conviction, twenty years for the especially aggravated burglary conviction, ten years for the aggravated burglary conviction, twenty years each for the two aggravated kidnapping convictions, and four years for the sexual battery conviction. The trial court ordered that the Defendant serve 100% of his sentences for aggravated rape and aggravated kidnapping as a violent offender. See Tenn. Code Ann. § 40-35-501(i)(1), (2)(D), (F) (1997). The trial court further ordered the sentences for the two aggravated kidnapping convictions to run concurrently and the remaining sentences to run consecutively, for an effective sentence of ninety-four years. In an amended judgment, the trial court reduced the especially aggravated burglary conviction to aggravated burglary with a ten-year sentence, resulting in a total effective sentence of eighty-four years.

## C. Standard of Review

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

We conclude that the trial court wrongfully applied certain enhancement factors. Therefore, our standard of review must be *de novo* without a presumption of correctness.

## D. Enhancement Factors

[4]Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

The Defendant submits the trial court wrongfully applied enhancement factor (10), high risk to human life; enhancement factor (16), great potential for bodily injury to a victim; and enhancement factor (18), an aggravated child abuse victim suffered permanent impairment. See Tenn. Code Ann. § 40-35-114(10), (16), (18) (1997). The Defendant does not contest the trial court's application of enhancement factor (1), prior history of criminal convictions or criminal conduct; and enhancement factor (9), the Defendant possessed or employed a weapon. See id. § 40-35-114(1), (9). Although the Defendant does not contest the applicability of enhancement factor (9), upon reviewing the record, we conclude the evidence was insufficient to support the applicability of this factor to the Defendant's convictions for sexual battery and aggravated burglary regarding the August incident.

### 1. Enhancement Factor (10)

Enhancement factor (10), high risk to human life, may be applied in cases where persons other than the victim were subject to injury. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). This factor is also applicable where a defendant exhibits "a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994).

The Defendant was convicted of aggravated rape by bodily injury. See Tenn. Code Ann. § 39-13-502(a)(2). Although the State concedes error, we reject its concession. The evidence in this case demonstrates that in committing the aggravated rape, the Defendant engaged in harmful conduct which was "clearly beyond what [was] necessary to prove the underlying offense." State v. Williams, 920 S.W.2d 247, 260 (Tenn. Crim. App. 1995). The underlying offense only required bodily injury. See Tenn. Code Ann. § 39-13-502(a)(2). The Defendant broke into the victim's residence in the middle of the night while the victim was sleeping, choked her, threatened to kill her, drug her by her throat and legs to his residence, raped her, and beat her. As a result of the incident, the victim suffered deep lacerations to her face and neck, which had to be sutured and caused permanent scarring. In addition, the victim was unable to walk and use her arms and hands for a period of time. Based on these circumstances, we conclude that the trial court properly applied enhancement factor (10) to the Defendant's aggravated rape conviction.

The Defendant was also convicted of one count of aggravated burglary of a habitation with the intent to commit sexual battery regarding the August incident and one count of aggravated burglary of a habitation with the intent to commit rape regarding the October incident. See Tenn. Code Ann. § 39-14-403(a). As to the October incident, we conclude that the circumstances, as related above, demonstrate a high risk to life clearly beyond that which was necessary to prove aggravated burglary. Therefore, the trial court properly applied enhancement factor (10) to the Defendant's conviction for aggravated burglary regarding the October incident. However, in regard to the August incident, the evidence was insufficient to establish that the Defendant committed this offense under circumstances in which the risk to human life was high. Therefore, the trial court misapplied this enhancement factor to the Defendant's conviction for aggravated burglary regarding the August incident.

The Defendant was convicted of aggravated kidnapping for the removal and confinement of the victim in October in order to facilitate the commission of aggravated rape. See Tenn. Code Ann. § 39-13-304(a)(1). The proof establishes that the Defendant committed the offense under circumstances in which the risk to human life was high and beyond that which was necessary to prove aggravated kidnapping. Therefore, the trial court properly applied enhancement factor (10) to the October aggravated kidnapping.

Finally, the trial court applied enhancement factor (10) to the Defendant's sexual battery conviction which was committed during the August incident. However, we conclude that the evidence was insufficient to establish that the Defendant committed this offense under circumstances in which the risk to human life was high.

## 2. Enhancement Factor (16)

In determining whether enhancement factor (16), great potential for bodily injury to a victim, applies to the convictions for aggravated rape and aggravated burglary, this court has noted that in enhancing the punishment for these offenses, "the General Assembly recognized that . . . the potential for bodily injury to the victim is great when these crimes are committed." State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994). Therefore, a trial court should apply this enhancement factor to these offenses only under "extraordinary circumstances." Id. We are unable to conclude that the circumstances in this case are so extraordinary as to warrant the application of this enhancement factor. Furthermore, because facilitation of aggravated rape was an element of the Defendant's aggravated kidnapping conviction, we conclude the trial court misapplied enhancement factor (16) to the aggravated kidnapping conviction.

The Defendant's sexual battery conviction for the August incident arose out of his actions in rubbing the victim's buttocks. These actions, in and of themselves, do not create a great potential for bodily injury. Thus, the trial court erred in applying this enhancement factor to the Defendant's sexual battery conviction.

## 3. Enhancement Factor (18)

Enhancement factor (18) is applicable where a victim of aggravated child abuse or neglect "suffered permanent impairment of either physical or mental functions as a result of the abuse inflicted." Tenn. Code Ann. § 40-35-114(18) (1997); see id. § 39-15-402 (aggravated child abuse and neglect). The Defendant maintains this enhancement factor was improperly applied because the victim in this case was not a victim of aggravated child abuse or neglect. The State concedes that this enhancement factor is inapplicable to this case, and we agree.

### 4. Effect of Wrongful Application of Enhancement Factors

The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. Imfeld, 70 S.W.3d at 707.

We note that the trial court sentenced the Defendant as a Range II multiple offender. This requires that the Defendant have at least two prior felony convictions "within the conviction class, a higher class, or within the next two . . . lower felony classes"; or one prior Class A felony conviction if the Defendant is convicted of a Class A or Class B felony. Tenn. Code Ann. § 40-35-106(a). The trial court also applied enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" to all of the convictions. See id. § 40-35-114(1) (1997). The record reveals that in 1983, the Defendant was convicted of larceny from a person, aggravated robbery, petit larceny, and rape, as a result of events involving three different victims. In 1998, the Defendant was convicted of driving on a revoked license, a misdemeanor. The Defendant's prior record is well beyond that which was necessary to establish the appropriate range. Accordingly, we place great weight on enhancement factor (1).

We have concluded that enhancement factors (1), (9), and (10) apply to the Defendant's convictions for aggravated rape, aggravated kidnapping, and one count of aggravated burglary regarding the October incident. Based on the great amount of weight that we place on these enhancement factors, we conclude the trial court properly imposed the maximum sentence for these convictions.

However, we have concluded that only enhancement factor (1) applies to the Defendant's convictions for sexual battery and one count of aggravated burglary regarding the August incident. Therefore, we reduce the Defendant's sentence for sexual battery from four years to three years, and we reduce his sentence for one count of aggravated burglary from ten years to seven years. As a result, the Defendant's effective sentence is reduced from eighty-four years to eighty years.

### IV. CONCLUSION

In summary, we conclude the trial court did not commit reversible error in refusing to sever the August offenses from the October offenses. Furthermore, because the Defendant's dual convictions for aggravated kidnapping violate double jeopardy principles, we reverse and vacate the second count of aggravated kidnapping. Finally, due to the wrongful application of enhancement factors by the trial court, we reduce the Defendant's sentences for sexual battery to three years and the Defendant's sentence for aggravated burglary from the August incident to seven years, thereby reducing the Defendant's effective sentence from eighty-four years to eighty years. The judgments of the trial court are otherwise affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE